IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JERREL M., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:18-CV-1274-G-BK |
| | § | |
| COMMISSIONER, | § | |
| SOCIAL SECURITY ADMINISTRATION | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3*, this case has been referred to the undersigned for pretrial management. Doc. 5. Before the Court are the parties' cross-motions for summary judgment. Doc. 17; Doc. 18. For the reasons that follow, Plaintiff's motion, Doc. 17, should be **DENIED**, Defendant's motion, Doc. 18, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I.
BACKGROUND**

**A.    PROCEDURAL HISTORY**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his application for disability benefits under the Social Security Act ("the Act"). Doc. 1 at 1. Plaintiff filed for benefits in December 2013, claiming he became disabled in November 2013 due to hypertension, lower back pain, knee problems, diabetes, and glaucoma in both eyes. Doc. 1 at 4; Doc. 14-1 at 224.

In December 2016, subsequent to a September 2015 administrative hearing and a November 2015 decision by the ALJ denying Plaintiff's claims ("Decision I"), the Appeals Council remanded the case to the ALJ to: (1) evaluate Plaintiff's newly submitted evidence—specifically the September 2015 record in which Plaintiff was observed with an antalgic gait, Doc. 14-1 at 701, and the October 2015 MRI, Doc. 14-1 at 682—and determine if the RFC remained supported by substantial evidence; and (2) further evaluate Plaintiff's past work to determine if such work qualified as past relevant work. Doc. 14-1 at 264. The Appeals Council also held that the ALJ must: (1) obtain additional evidence, which may include, if warranted and available, consultative examinations and medical source statements; (2) if necessary, obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments; (3) give further consideration to Plaintiff's RFC and provide appropriate rationale with specific references to evidence of record; and (4) further evaluate Plaintiff's past relevant work, including obtaining—if warranted—supplemental evidence from a vocational expert. Doc. 14-1 at 264-265.

In accordance with the Remand Order, the ALJ held another hearing in May 2017. After which, on July 28, 2017, the ALJ issued Plaintiff a second unfavorable decision ("Decision II"). In May 2018, the Appeals Council denied Plaintiff's request for review of Decision II. Doc. 14-1 at 5. Decision II thus became the final decision of the Commissioner; Plaintiff now appeals the Commissioner's final decision to this Court pursuant to 42 U.S.C. § 405(g).

**B.    FACTUAL BACKGROUND**

Plaintiff was 56 years old on his alleged disability onset date and has been unemployed since January 2007. Doc. 14-1 at 224, 233, 451. He completed some college courses and worked in the food service industry as a chef for five years. Doc. 14-1 at 115, 452.

2

1.     **Diabetes and hypertension**

The medical records reveal that since at least March 2013, Plaintiff was regularly seen and treated for diabetes and hypertension, usually at Parkland Hospital. Doc. 14-1 at 550; *see also* Doc. 14-1 at 564 (November 2013 visit); Doc. 14-1 at 674 (March 2015 visit); Doc. 14-1 at 698 (September 2015 visit). In April 2014, Plaintiff was seen by Dr. Siddiqui, reported compliance with his medication regimen, and underwent a diabetic foot exam which revealed normal skin temperature, turgor and color, no open lesions or infection or edema, and intact sensation. Doc. 14-1 at 577-79. At a July 2014 Parkland Hospital follow-up visit, Plaintiff did not exhibit any relevant symptoms. Doc. 14-1 at 595. Similarly, at Plaintiff's March 2015 visit, Dr. Pels' diagnosis included Type II or unspecified diabetes mellitus without mention of complication and unspecified essential hypertension. Doc. 14-1 at 674.

2.     **Musculoskeletal**

At his March 2013 visit, Plaintiff complained of trauma to his right knee, and an x-ray showed "[o]steopenia with mild tricompartmental degenerative changes," but "[n]o acute displaced fracture or dislocation" and "no large knee effusion." Doc. 14-1 at 556. At his April 2013 visit to Dr. Siddiqui, Plaintiff demonstrated a normal range of motion. Doc. 14-1 at 579. During a February 2014 consultative examination by Dr. Panousieris, Plaintiff complained of knee and lower back pain after sitting or standing for extended periods of time, sharp, left-sided chest pains, joint stiffness, arthritis, muscle pain, and back pain. Doc. 14-1 at 569-70. However, Plaintiff's reflexes were symmetrical, his extremities showed no "cyanosis, clubbing, edema, pulse deficit, or thrombophlebitis," and he had a negative straight leg raising test, minimal degenerative joint disease in the knees without effusion or instability, no muscle wasting, and

normal gait and balance.  Doc. 14-1 at 570.  Plaintiff was also able to get "up and down from the [examination] table without assistance," squat and heal/toe walk, and dress himself.  Doc. 14-1 at 571.  An x-ray of Plaintiff's lumbosacral spine on that day revealed "unremarkable bone and disc architecture" with "minimal atherosclerosis of the aorta without aneurysm dilation."  Doc. 14-1 at 571.

In April 2014, Plaintiff visited the Dallas Regional Medical Center for abdominal pain that radiated to his back and groin, and he complained that his back pain was "10 out of 10 on a pain scale."  Doc. 14-1 at 601, 607.  Plaintiff had no other symptoms except abdominal pain and nausea, and after later reporting decreased pain, was discharged the same day in stable condition.  Doc. 14-1 at 601-607, 611.  In October 2014, Plaintiff complained of left-sided, low back pain that radiated down his left leg.  Doc. 14-1 at 625.  An examination indicated back pain but no myalgias, gait problem, or neck pain.  Doc. 14-1 at 627.  Plaintiff had normal range of motion with "[t]enderness to right low back" and normal strength and reflexes.  Doc. 14-1 at 627.  An x-ray of Plaintiff's lumbar spine showed "[d]egenerative changes" but "[n]o significant acute radiographic abnormalities."  Doc. 14-1 at 628.

When examined at Parkland in April 2015, Plaintiff had full range of motion of his back, without spasms or pain, showed no joint tenderness, deformity, or swelling, and had normal peripheral pulses in his extremities.  Doc. 14-1 at 665-68.  During a visit to Parkland in May 2015, Plaintiff complained of hip pain that radiated to the right side of his thigh.  Doc. 14-1 at 656.  Upon examination, however, Plaintiff had a full range of motion in his back, without tenderness, spasms, deformity, or swelling.  Doc. 14-1 at 659.  An x-ray of Plaintiff's lumbosacral spine resulted in similar findings to the prior month's x-ray.  Doc. 14-1 at 649.

4

In September of that year, Plaintiff again complained of hip pain to Dr. Ericka Williams. Doc. 14-1 at 698. She noted that he had an antalgic gait, but a full range of motion of his back and normal extremities. Doc. 14-1 at 701. The following month, an MRI of Plaintiff's pelvis showed "increased T2 signal in the superior portion of the right acetabulum," a "[p]atrial tear of the tendinous attachments to the anterior superior iliac spine on the right," and a "[d]iffusely abnormal low T1 narrow signal." Doc. 14-1 at 682.

Upon examination in December 2015, however, Plaintiff's extremities were normal, and he had no joint tenderness, deformity, or swelling. Doc. 14-1 at 724. In April 2016, Plaintiff presented with right hip pain on external/internal rotation, but full range of motion in his back, with "no tenderness, palpable spasm or pain on motion." Doc. 14-1 at 730. Plaintiff's diagnosis included a lower" extremity tendon tear, right, sequela at Sartorius, partial tear . . . with ongoing pain and antalgic gait." Doc. 14-1 at 731-32. However, at Plaintiff's follow-up visit in September 2016, a musculoskeletal examination showed "no joint tenderness, deformity or swelling." Doc. 14-1 at 737.

In February 2017, Plaintiff reported that treatment had provided a 75 percent relief from pain in his right hip, until he "turned awkwardly while lifting an object." Doc. 14-1 at 752. Plaintiff had full strength bilaterally with a mildly antalgic gait and tenderness in the right lumbar spine muscles, right sacroiliac joint, and right greater trochanteric bursa. Doc. 14-1 at 755-56. Dr. Alexander encouraged Plaintiff to increase his activity level and use a home exercise program to help with his functional status and weight loss efforts. Doc. 14-1 at 756.

  **3.**  **Ocular**

In November 2013, Plaintiff complained of blurred vision, and an examination indicated suspicion of glaucoma, incipient cataract, and anterior corneal pigmentation of left eye. Doc. 14-

1 at 564.  In April 2014, Plaintiff saw Dr. Siddiqui and reported malaise/fatigue and blurred vision.  Doc. 14-1 at 577-78.  Dr. Siddiqui noted that Plaintiff's pupils were equal, round, and reactive to light.  Doc. 14-1 at 579.

At his Parkland visit in March 2015, Plaintiff complained of blurred vision, and Dr. Pels noted, "Glaucoma suspect, bilateral."  Doc. 14-1 at 674.  During an examination at Parkland the next month, Plaintiff's pupils were equal and reactive and his extraocular eye movements were intact.  Doc. 14-1 at 665-68.  In September 2015, Dr. Ericka Williams noted that Plaintiff's pupils were equal and reactive and his extraocular eye movements were intact.  Doc. 14-1 at 701.  Plaintiff's December 2015 showed the same.  Doc. 14-1 at 724.  While Plaintiff's April 2016 eye examinations were normal, he was referred to Southeast Optometry for "[g]laucoma of both eyes, unspecified glaucoma."  Doc. 14-1 at 730-32.  And though Plaintiff reported blurry vision in September 2016, his eye examination again was unremarkable, and the report again indicated a referral to Southeast Optometry for "[g]laucoma suspect, bilateral."  Doc. 14-1 at 737-39.  At that September 2016 visit, Dr. Williams also noted that Plaintiff was "[d]oing well."  Doc. 14-1 at 739.

   **4.**  **Consultative Examination and Reviews**

Following an April 2014 consultative examination by Dr. Panousieris, Doc. 14-1 at 568, Dr. Panousieris reported that Plaintiff had a history of hypertension, hyperlipidemia, coronary artery disease (status post stenting), and diabetes without ophthalmopathy, nephropathy, or neuropathy, as well as possible claudication in the right lower extremity, obstructive sleep apnea, cataracts and glaucoma, bleeding peptic ulcers (remote), degenerative joint disease of the knees, and recurrent back spasms.  Doc. 14-1 at 572.

In March and June 2014, two state agency medical consultant physicians, Drs. Andrea Fritz and Roberta Herman, separately reviewed all the available medical evidence and prepared a *Disability Determination Explanation* ("DDE"), in which each determined that Plaintiff was capable of performing work at the medium exertional level—standing and/or walking for up to six hours in an eight-hour workday and sitting up to six hours in an eight-hour work day. Doc. 14-1 at 224-31, 238-39.

### 5. Hearing Testimony

At the administrative hearing in September 2015, Plaintiff testified that since 2013, he has had lower back pain that radiates to his right hip and thighs and worsens when he sits or stands too long. Doc. 14-1 at 115-116. Plaintiff further testified that he has never had physical therapy and takes oral pain medication that helps "a little" and "just for a while." Doc. 14-1 at 116-117. Plaintiff also stated his blood pressure fluctuates, resulting in nausea, he has burning, sharp pain in his feet and legs, and has chest pain three or four times a week, sometimes with shortness of breath and without exertion. Doc. 14-1 at 118-119. He has knee pain when walking or standing and believes the maximum distance he could walk is a quarter of a mile before experiencing shortness of breath and pain in his side. Doc. 14-1 at 122.

Plaintiff further testified that his past work was as a cook and a chef, which required constant standing and lifting up to 100 pounds. Doc. 14-1 at 123. Plaintiff lives with his sister and is able to take care of his personal hygiene and cook; however, he is not responsible for housekeeping or shopping and he does not have a car. Doc. 14-1 at 114-125. Plaintiff also testified that although he does not have a driver's license, he could "probably" drive a car if he did. Doc. 14-1 at 114-125.

7

At the May 2017, Plaintiff gave testimony consistent with that given at the 2015 hearing, adding that he is able to see when wearing corrective glasses, he is eating better, he "sometimes" cooks and helps with sweeping, mopping, or vacuuming at home, he is able to take care of his personal needs but needs help tying his shoes, and has sleep apnea. Doc. 14-1 at 193-213.

A Vocational Expert ("VE") testified at the first hearing that Plaintiff's past relevant work as a chef was within the RFC ("Residual Functional Capacity") for medium work, as it is classified as light work, but sometimes performed as medium. Doc. 14-1 at 126. However, with the symptoms Plaintiff testified to at the hearing, no work would be available. Doc. 14-1 at 126. On examination by Plaintiff's counsel, the VE testified that Plaintiff's past relevant work is a composite job of chef/short order cook, and if Plaintiff were limited to (1) standing and walking for six hours in an eight-hour day, occasionally lifting 20 pounds, and frequently lifting ten pounds, or (2) occasionally lifting and carrying ten pounds, frequently lifting and carrying less than ten pounds, and standing/walking for two hours out of an eight-hour day, he could not perform the composite job of a chef/short order cook. Doc. 14-1 at 127-129.

At the hearing following the remand, a different VE testified that Plaintiff's past work as a chef is classified as "[s]killed, medium," there are over 400,000 chef positions in Texas, there are over 4.3 million chef job positions nationally, and that for Plaintiff to perform his past relevant work, he would "have to be able to lift 20 to 50 pounds and stand at least 2 hours at a time." Doc. 14-1 at 213-19.

### C. THE ALJ'S FINDINGS AND CONCLUSIONS

In Decision II, the ALJ found that Plaintiff had severe impairments of diabetes, coronary artery disease with a history of stents, degenerative disc disease, degenerative joint disease, osteopenia, tendon tear, ulcers, obesity, hypertension, and sleep anea, but that Plaintiff did not

8

have an impairment or combination of impairments that met or medically equaled any Listed Impairment. Doc. 14-1 at 15-21. The ALJ concluded that Plaintiff had the RFC to occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, stand and/or walk in combination for up to six hours in an eight-hour workday, and sit for up to six hours in an eight-hour day, but would need a break "every two hours in order to sustain a full workday." Doc. 14-1 at 23. Based on this RFC, the ALJ concluded that Plaintiff is "capable of performing past relevant work as a chef" as well as other jobs existing in the national economy; therefore, Plaintiff was not disabled under the Act. Doc. 14-1 at 31-33.

## II.
## APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the Regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III.
### ANALYSIS

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by

10

"citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

The only issue before the Court is whether the ALJ's ultimate decision is supported by substantial evidence. Plaintiff argues that the decision "violated the Appeals Council's Remand Order" because the ALJ (1) "relied on the stale opinions of the SAMEs" instead of recent evidence, (2) did not send Plaintiff to a consultative examine before the 2017 hearing or call for a medical expert to testify at such hearing, (3) "failed to fully and fairly develop the record by obtaining a medical source statement concerning what functional activities the Plaintiff could perform," (4) did not identify any "specific jobs" that Plaintiff could perform, and (5) "erroneously cited to medical vocational guideline rules as a basis for denying Plaintiff's claim." Doc. 17 at 20. Defendant argues that the ALJ's opinion comports with the Appeals Council's remand order and is supported by substantial evidence. Doc. 18 at 14-22.

Upon review, the Court finds that the ALJ's decision is supported by substantial evidence. The ALJ's analysis included a thorough discussion of all of the evidence of record and a detailed application of the evidence to the relevant listings. Doc. 14-1 at 17-23. The ALJ discussed why it gave little weight to Plaintiff's subjective complaints that were not supported by the medical evidence. Doc. 14-1 at 23-27. The ALJ also adequately explained why it gave great weight to the uncontradicted RFC's of the two state consulting physicians, Drs. Fritz and Herman. After reviewing of all of the medical records available at the time, Drs. Fritz and Herman concluded that Plaintiff could stand and/or walk for up to six hours in an eight-hour workday and sit up to six hours in an eight-hour work day. Doc. 14-1 at 224-31, 238-39. The

ALJ's RFC further considered Plaintiff's later evidence of degenerative disc disease and degenerative joint disease by its inclusion of a break every two hours.

Additionally, the Court is without jurisdiction to consider Plaintiff's arguments that the ALJ violated the Remand Order. "[W]hether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision." *Walker v. Astrue*, No. 08-3666, 2009 WL 3160165, at *14 (E.D. La. Sept. 29, 2009) (quoting *Brown v. Comm. of Social Security*, 2009 WL 465708, at *6 (W.D. Mich. Feb. 24, 2009)). "By denying plaintiff's request for review the [Appeals Council] implicitly f[inds] that its earlier remand order ha[s] been followed." *Id.* (citing *Bass v. Astrue*, No. 1:06cv591, 2008 WL 3413299, at *4, n.2 (M.D.N.C. Aug. 8, 2008)). 42 U.S.C. § 405(g) only vests federal courts with jurisdiction over civil actions contesting a final decision of the Commissioner and "does not provide a federal court with authority to review intermediate agency decisions that occur during the administrative review process." *Id. at 14-15*. Here, the Appeals Council denied Plaintiff's request for review of the ALJ's second decision; thus, the ALJ's second decision is the only decision subject to this Court's jurisdiction. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("[I]f, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision." citations omitted)).

Even if, *arguendo*, the Court had jurisdiction to consider whether the ALJ violated the Remand Order, Plaintiff's arguments fail. While the ALJ considered the State agency medical consultant's opinions, he expressly stated that he considered "the entire record," and the Court "see[s] no reason or evidence to dispute his assertion." *Brunson v. Astrue*, 387 Fed.Appx. 459, 2010 WL 2802372, at *2 (5th Cir. 2010). Further, the ALJ specifically considered evidence dated after the State agency medical consultant's issued their opinions, including Plaintiff's (1)

2015 MRI, (2) December 2015 Parkland visit whereby he "exhibited an antalgic gait," (3) April and September 2016 Parkland physical examinations, and (4) February 2017 follow-up whereby Plaintiff reported a "75 percent relief for five months until he turned awkwardly while lifting an object." Doc. 14-1 at 19-20.

Plaintiff's argument that the ALJ erred because it did not refer Plaintiff a new consultative examination or a medical source statement fails because, as Defendant correctly notes, the Remand Order "merely suggested the ALJ obtain a new consultative examination or medical source statement, if warranted and available." Doc. 18 at 19; *see also* Doc. 14-1 at 265 (Remand Order stating that the ALJ must obtain additional evidence that "may include, if warranted and available, consultative examinations and medical source statements about what the claimant can still do despite the impairment"). The ALJ specifically reasoned that it "did not believe additional development would change the result [of] this case." Doc. 14-1 at 30. The medical records generated after the 2015 administrative hearing bear this out, as Plaintiff's pain was significantly alleviated by treatment and he appeared to have normal functions. Doc. 14-1 at 701, 724, 730, 737.

Plaintiff's argument that the ALJ erred by stating there were other jobs Plaintiff could perform in the national economy, without identifying those jobs, fails for the same reason. Doc. 17 at 20. Plaintiff contends that such "finding of fact violated the Remand Order which ordered the ALJ to obtain testimony from a VE, ask hypothetical RFCs at the hearing to the VE, and to obtain 'examples of appropriate jobs and to state the incidence of such jobs in the national economy.'" However, the Appeals Council directive was clearly contingent. *See* Doc. 14-1 at 265 (Remand Order stating that the ALJ "must further evaluate Plaintiff's past relevant work, including obtaining *if warranted* obtain supplemental evidence from a vocational expert . . .

13

[and] ask the vocational expert to identify examples of appropriate jobs." (emphasis added)). Indeed, the ALJ's finding that Plaintiff *could* perform his past, relevant work as a chef wholly eliminated the need to explore other jobs. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (an individual capable of performing his past work is not disabled, and only if an individual's impairment precludes him from performing his past work, must other factors, including the RFC, be considered to determine if any other work can be performed).

Similarly, Plaintiff's reliance on *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) for the proposition that an ALJ's duty to fully and fairly develop the record includes a duty to "obtain a medical source statement" and send "the Plaintiff to a consultative examination or scheduling a supplemental hearing with a medical expert" is misplaced. Doc. 17 at 18. As Plaintiff himself notes, the court in *Ripley* found that to fully and fairly develop the record, "usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing," but that the absence of such a statement does not make the record incomplete where the ALJ's decision is supported by substantial evidence. *Ripley*, 67 F.3d at 557. Like *Ripley*, the ALJ's decision in this case is supported by substantial evidence.

Finally, Plaintiff's argument that Medical-Vocational Rules 203.07 and 203.15 are inapplicable is meritless. Plaintiff contends that said rules: (1) apply when a claimant has an RFC for work at the medium exertional level, and the ALJ allegedly assessed him with an RFC for less than such by incorporating a need for "a break every 2-hours"; and (2) apply when a claimant has skilled or semi-skilled past relevant work, and that the Appeals Council ruled that Plaintiff did not have any such past relevant work. However, the ALJ concluded that Plaintiff could "lift and/or carry 50 pounds occasionally and 25 pounds frequently," which falls squarely within the definition of medium work, and Plaintiff provides no support for his argument that a

14

need for a break every two hours negates that finding. 20 C.F.R. § 416.967(c). Doc. 14-1. Moreover, as Defendant notes, while the Appeals Council commented on Plaintiff's past relevant work, it also called on the ALJ to further evaluate Plaintiff's past relevant work, and the ALJ complied. Doc. 14-1 at 30-31, 213-19.

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 17, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 18, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED.**

**SIGNED** August 20, 2019.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made and state the basis for the objection and where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).